IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID AZRAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 15-cv-5116 |
| v. | ) | |
| | ) | |
| FIDELITY NATIONAL TITLE COMPANY, LLC, | ) | **JURY DEMANDED** |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Now comes David Azran, by and through his attorney, J. Stephen Walker, and for his Complaint against Fidelity National Title Company, LLC states as follows:

### Parties

1. David Azran ("Azran") is a resident of Cook County, Illinois.

2. Fidelity National Title Company, LLC ("Fidelity") is a Delaware limited liability company with its principal place of business in Jacksonville, Florida. Fidelity's sole member, Fidelity National Title Agency Holding, is a Delaware corporation with its principal place of business in Jacksonville, Florida, located at the same address as Fidelity. On information and belief, on or about April 11, 2011, Fidelity entered into an agreement with Ticor Title Insurance Company ("Ticor"), a California corporation registered to do business in Illinois pursuant to which Ticor was merged/consolidated into Fidelity.

### Jurisdiction and Venue

3. Jurisdiction is based upon 28 U.S.C. §1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs.

4. Venue is proper in this District pursuant to 28 U.S.C. §1391(a)(1) and (a)(2).

## Background

5. At all times material hereto, Cesareo Olivo ("Olivo") was a resident of Cook County, Illinois.

6. On or about October 30, 2007, Olivo purchased the residential property located at 6638 S. Albany Avenue, Chicago, Illinois 60629 ("Albany") for the sum of $77,500.00. A copy of the Deed, recorded as document number 0801010169 in the Office of the Cook County Recorder of Deeds is attached hereto as Exhibit A.

7. Subsequent to Olivo's purchase of the Albany property, Olivo requested a loan from Azran in the amount of $65,000.00, which would be secured by Olivo giving Azran a first mortgage lien on the Albany property. Azran agreed to make the loan to Olivo subject to Olivo's delivery of the first mortgage lien and providing Azran a lender's title insurance policy from Ticor.

8. Prior to March 5, 2008, Renee Kalman, an authorized agent of Ticor, requested and obtained Ticor's commitment to issue a lender's title policy effective March 5, 2008 securing and insuring Azran's first mortgage lien on the Albany property. See Ticor Policy No. 2000-000637527, a copy of which is attached hereto as Exhibit B and incorporated by reference herein.

9. On March 5, 2008, Olivo executed an Installment Note payable to Azran in the

        principal amount of $65,000.00, a copy of which is attached hereto as Exhibit C and incorporated by reference herein, which expressly provides that Olivo is responsible for attorney's fees and costs incurred by Azran in the enforcement of that Note. On that same date, Olivo executed and delivered a mortgage on the Albany property to Azran (the "Mortgage"), a copy of which is attached as Exhibit D and incorporated by reference herein.

10. Upon receipt of the executed Installment Note and Mortgage on March 5, 2008, Stephen Richek ("Richek"), Azran's attorney for the loan, closing delivered to Ticor the original Mortgage and Richek's check in the amount of $1,016.50 in fully payment of the fees due Ticor for the issuance of the Lender's Title Insurance Policy. A copy of the front and back of Richek's check is attached hereto as Exhibit E.

11. Ticor retained physical custody of the Mortgage and Richek's check from March 5, 2008 until August 11, 2008, when Ticor recorded the Mortgage with the Cook County Recorder of Deeds as document number 0822445072. See Exhibit D.

12. On or about July 28, 2008, Olivo sold the Albany property to Miguel Castro and Armando Castro for a purchase price of $108,000.00. A copy of the Warranty Deed executed by Olivo on July 28, 2008 and recorded with the Cook County Recorder of Deeds on August 4, 2008 as document number 0821757047 is attached hereto as Exhibit F and incorporated by reference herein. Azran had no knowledge of Olivo's sale of the Albany property until January 2010.

13. The balance due Azran on the Olivo Installment Note as of July 31, 2008 was in

excess of $75,000.00.

<b><u>Count I</u></b><br><b><u>Breach of Contract</u></b>

14. Azran incorporates paragraphs 1 through 13 as and for paragraph 14 of Count I of this Complaint.

15. Pursuant to the terms of its commitment to issue a lender's title insurance policy to Azran on the Albany property, Ticor had a duty to record the Olivo Mortgage on the Albany property in a timely manner. Ticor's failure to record the Mortgage for almost six months was a breach of its contractual obligations to Azran and demonstrated a total and complete disregard for Azran's interests.

16. But for Ticor's breach of its contractual obligations to Azran, all amounts due Azran under Exhibit C would have been paid in full at the closing on Olivo's sale of the Albany property on or about August 1, 2008.

17. After discovery of Olivo's sale of the Albany property, Azran reported the sale and Ticor's failure to record Azran's Mortgage in a timely manner to Ticor. Ticor failed to respond or otherwise honor its contractual obligations to Azran.

18. When Ticor failed to take any action to protect Azran's interests or fulfill its contractual obligations to Azran, Azran, in an effort to mitigate his damages and reduce the expense of enforcing his contract with Ticor, persuaded Olivo to provide Azran with substitute collateral for the loan in the form of a first mortgage on the property commonly known as 7330 S. Stewart, Chicago, Illinois. The market value of the Stewart property, however, was substantially lower than the

sales price for the Albany property. Ticor did not issue or provide Azran with a lender's title policy on the Stewart property. In addition to the substitute collateral, Azran made repeated demands on Olivo to pay the balance due on his Note.

19. At all times material hereto, Azran has fully complied with his contractual obligations to Ticor and its successor.

20. Thereafter, Olivo failed and refused to pay the balance due on his loan.

21. As a direct result of Fidelity's breach of its contractual obligations, Azran has suffered damages in excess of $75,000.00.

WHEREFORE, Plaintiff David Azran respectfully requests the entry of a judgment in favor of the Plaintiff and against the Defendant in an amount to be determined by the Court and for such other and further relief as the Court deems proper and just.

### Count II
### Fraud

22. Azran realleges paragraphs 1 through 21 as and for paragraph 22 of Count II of Plaintiff's Complaint.

23. At all times on or before March 5, 2008, Ticor affirmatively represented to Azran that it would issue a lender's title policy effective March 5, 2008 insuring that Azran would have a first mortgage lien on the Albany property.

24. During the period from March 5, 2008 through August 10, 2008, Ticor knowingly and intentionally failed to record the Mortgage on the Albany property and knowingly and intentionally refused to disclose its failure to record the mortgage

to Azran.

25. When Ticor recorded the Olivo Mortgage on the Albany property on August 11, 2008, Ticor knew or should have known that Olivo no longer held title to the Albany property.

26. In or about July 2013, Azran renewed his demand that Fidelity pay the balance due Azran under the lender's policy.

27. On September 6, 2013, Fidelity purportedly notified Azran that there was no coverage for his claim on his lender's title policy insuring his first mortgage lien on the Albany property. This notice was not received by Azran until January 8, 2014. Fidelity's denial of coverage was based on the ground that Olivo did not have title to the Albany property on the effective date of the policy (August 11, 2008), the date on which Ticor recorded the Mortgage.

28. Azran renewed his title claim and demanded immediate payment on January 8, 2014. A copy of Azran's demand is attached as Exhibit G and incorporated by reference herein.

29. On January 15, 2014, Fidelity once again denied Azran's claim against the lender's title policy on the Albany property and affirmatively represented that under the policy Azran had not suffered any loss because he had obtained substitute collateral from Olivo, i.e. the first mortgage on the Stewart property. Fidelity also represented to Azran that the market value of the substitute collateral had a market value substantively higher than the market value of the Albany property. A copy of the denial letter is attached as Exhibit H.

30. Fidelity's denial letter also asserted that Azran had a duty under the policy to foreclose and liquidate at his own expense the Stewart property in order to establish any loss. Fidelity rejected Azran's offer to assign his lien on the substitute collateral to Fidelity upon Fidelity's payment of his claim.

31. Notwithstanding the lack of any merit to Fidelity's denial of his claim and Fidelity's misrepresentation of the market value of the Stewart property, Azran took the steps necessary to secure title to the Stewart property and sold the Stewart property on December 14, 2014.

32. Thereafter, Azran provided Fidelity with copies of the Stewart closing documents and a complete accounting of the Olivo loan history.

33. On May 12, 2015, Fidelity notified Azran that it was denying his claim on the Albany property's lender's policy on the ground that Azran had sold the Stewart property for substantially less than its fair market value. Fidelity tendered a drive by retroactive appraisal based upon Azran's sale of the Stewart property on December 14, 2014 in support of its denial of Azran's claim. The appraisal report does not comply with the Uniform Standards of Professional Appraisal Practice ("USPAP") as mandated by Illinois law and affirmatively misrepresents the value of the Stewart property. A copy of Fidelity's May 12, 2015 letter is attached hereto as Exhibit I.

34. There is no factual or legal basis for Fidelity's denial of Azran's claims and Fidelity's assertion of wrongful conduct by Azran in the sale of the Stewart property constitutes a false and fraudulent act by Fidelity.

35. At all times subsequent to Azran's assertion of a claim under his March 5, 2008 lender's title policy on the Albany property, Fidelity has repeatedly refused to acknowledge coverage and pay the claim and supported their denial by affirmative misrepresentations of fact and/or care relating to the effective date of the policy, the value of the Albany property, Azran's duties and obligations under the lender's policy, and the market value of the substitute collateral. Fidelity's actions in response to Azran's claim were knowing, intentional, and designed solely for the purpose of delaying and avoiding payment of Azran's claim. Fidelity's response to Azran's claim demonstrates a complete and total disregard of Fidelity's obligations to Azran and Azran's rights under his lender's title policy.

36. Fidelity's unwarranted denial and failure to pay Azran's claim has caused substantial harm and damage to Azran.

37. Fidelity's actions as alleged herein warrant the award of compensatory and punitive damages.

WHEREFORE, Plaintiff respectfully requests the entry of judgment in favor of the Plaintiff and against the Defendant for compensatory damages in excess of $25,000.00 and punitive damages in excess of $100,000.00, for costs including reasonable attorney's fees, and for such other relief as the Court deems proper and just.

### Count III
### Bad Faith Claim
### Illinois Insurance Code Section 155

38. Azran realleges paragraphs 1 through 37 as and for paragraph 38 of Count III of this Complaint.

39. As alleged herein, Fidelity's actions in response to Azran's claim under his lender's title insurance policy on the Albany property demonstrates bad faith under Section 155 of the Illinois Insurance Code 215 ILCS 5/2 et seq. Fidelity's denial of coverage, delay, and failure to pay Azran's claims constitutes vexatious and unreasonable conduct including but not limited to:

    (a) Fidelity's knowing misrepresentation of material facts and policy provisions;

    (b) Fidelity's failure to acknowledge coverage and liability and pay the loss incurred by Azran;

    (c) Forcing Azran to litigate to obtain his benefits;

    (d) Refusing to acknowledge an undisputed breach of its contractual obligations to Azran.

40. Pursuant to the terms of the Illinois Insurance Code, Azran is entitled to entry of judgment against Fidelity for penalties in accord with the provisions of the Illinois Insurance Code, attorney's fees and costs in amounts to be determined by the Court.

WHEREFORE, Plaintiff respectfully requests the entry of judgment in favor of the Plaintiff and against the Defendant for penalties, fees, costs, and prejudgment interest in accordance with the provisions of Section 155 of the Illinois Insurance Code and for such other relief as the Court deems proper and just.

## Count IV
## Illinois Consumer Fraud and Deceptive Business Practices Act

41. Azran realleges paragraphs 1 through 40 as and for paragraph 41 of Count IV of this Complaint.

42. At all times prior to March 5, 2008, Ticor affirmatively represented to Azran that it would promptly record Azran's first mortgage lien on the Albany property, which was to secure Azran's $65,000.00 loan to Olivo. Azran relied upon Ticor's representations in funding the loan to Olivo.

43. Contrary to its affirmative representations, Ticor failed to record the Mortgage on the Albany property for 156 days.

44. When Ticor finally recorded the Mortgage on the Albany property on August 11, 2008, Ticor knew or should have known that Olivo no longer held title to the Albany property.

45. On information and belief, Ticor knowingly and intentionally concealed from Azran the invalidity of his Mortgage on the Albany property.

46. During the period between March 5, 2008 and the recording date, Ticor had a duty to monitor the status of title on the Albany property to ensure that Olivo retained title to the property on the recording date.

47. All actions taken by Fidelity in response to Azran's claim under his lender's title policy on the Albany property were knowing and intentional and designed and intended to conceal Ticor's misrepresentations to Azran and its failure to timely record Azran's Mortgage on the Albany property.

48. In the event that Ticor had honored and fulfilled its representations to Azran and recorded Azran's Mortgage on a timely basis, Azran's loan to Olivo would have

been paid in full on August 4, 2008,

49. As of August 4, 2008, Azran suffered damages as a direct result of Ticor's misrepresentations and misconduct in the amount of $74,541.66.

50. Ticor and Fidelity's actions and misconduct warrant the imposition of punitive damages in an amount to be determined by the trier of fact.

51. Based upon Ticor's misrepresentations and concealment of it breach of these representations and Ticor and Fidelity's conduct in response to Azran's claim under his lender's title policy, Fidelity should be denied any offset to Azran's damage claim based upon his efforts to mitigate his damages.

WHEREFORE, Plaintiff David Azran respectfully requests the entry of judgment in favor of the Plaintiff and against the Defendant for:

(a) Compensatory damages in the amount of $74,541.66;

(b) Punitive damages in an amount to be determined by the Court;

(c) Prejudgment interest;

(d) Attorney's fees and costs; and

(e) Such other relief as the Court deems proper and just.

Respectfully Submitted,
David Azran

By   /s/ J. Stephen Walker
      J. Stephen Walker, His Attorney

Law Offices of J. Stephen Walker, P.C.
20 N. Clark Street, Suite 1200
Chicago, IL 60602
(312) 578-9191